633 P.2d 607

### In the Matter of the ESTATES OF Venita CAHOON and W. R. Cahoon, Deceased,

Gary R. CAHOON, Personal Representative of the Estates of Venita Cahoon and W. R. Cahoon, Appellant,

v.

Roger SEATON, Marla K. Stinger, John R. Seaton, Karalee Seaton, and Robin Seaton, Heirs of the Estate of Kathryn Seaton, Respondents.

No. 13347.

Supreme Court of Idaho.

Sept. 8, 1981.

Howard L. Armstrong, Jr., Pocatello, for appellant.

R. M. Whittier, Pocatello, for respondents.

McFADDEN, Justice.

W. R. Cahoon died intestate [1] on September 12, 1973, survived by his wife, Venita, and three adult children (Kathryn Seaton, Geneese Taylor, and appellant Gary Cahoon). In July 1974, Kathryn Seaton died, survived by five children, the respondents herein. On August 20, 1974, Venita Cahoon died testate. Her will, dated July 19, 1974, left the respondents $8,000 as a repayment for a loan made by Kathryn Seaton to the Cahoons, left her grandson, R. K. Taylor, 15% of the net estate, and divided the remainder of the estate between Geneese Taylor and Gary Cahoon. Appellant and his attorney were named executors under Venita's will.

In September, 1974, appellant Gary Cahoon and his attorney, Howard Armstrong, applied for appointment as personal representatives in the estate of Venita Cahoon, and applied for informal probate of her will, in the magistrate division of the Sixth District Court. Magistrate Scott so ordered. In January 1975, Geneese Taylor applied for appointment as personal representative and for an informal statement of intestacy in the estate of W. R. Cahoon. She also sought an informal statement that all assets of the estate were community property and passed to the surviving spouse, Venita. These requests were granted by Magistrate Bennett that same month. In October and November of 1975, inventories of the estates and petitions for settlement and distribution of proceeds to formally close the estates were filed by Gary Cahoon and Geneese Taylor as personal representatives. On November 24, 1975, Magistrate Smith entered orders approving the final accounting and decreeing distribution in both estates.

In January 1976 a check for $8,000 was sent to respondents' attorney in payment pursuant to the provision in Venita's will. Later that month, respondents' attorney filed petitions in the magistrate court seeking recission of the letters issued Geneese Taylor and Gary Cahoon alleging that they misrepresented the fact that W. R. Cahoon was intestate (and, indeed, destroyed his will); that they unduly influenced Venita in the making of her will; that they falsified the estate inventories; and that they conducted family corporate business with an intent to defraud respondents and other shareholders. Respondents also petitioned for supervised administration of the estates. The petitions for supervised administration were granted by order of Magistrate Bennett on January 29, 1976.

Thereafter, by petitions filed May 6, 1976, respondents sought orders reopening both estates and setting aside the distribution decrees basically on the grounds set forth in their January 1976 petitions. Also filed on May 6, were affidavits of Roger Seaton, an heir of Kathryn Seaton and one of the respondents herein. These affidavits again set forth many of the allegations of wrongdoing leveled against appellant.

Appellant responded to the May 6 petitions by filing in July 1976, an ex parte motion to set aside the respondents' petitions and to set aside the related order

---

1. The facts here related concerning the nature and distribution of the estates of W. R. and Venita Cahoon are taken from the probate proceedings below and are contested in part by respondents.

reopening the estates.[2] This motion was based on the grounds that the petitions to reopen were untimely, that the order reopening the estates was signed by a magistrate uninvolved with the probate proceedings, and that respondents were represented by counsel and had actual notice of the probate proceedings almost from their initiation. Magistrate Smith on July 16, 1976, granted appellant's motion and set aside the order reopening the estates.

Over two years later, in September 1978, Geneese Taylor and Gary Cahoon as personal representatives moved to amend the inventories filed in the estates to include some community real property previously unmentioned. Magistrate Smith granted the motion to amend, and entered orders approving the accountings and decreeing distribution. Two days following this action, respondents moved to set aside the order of July 16, 1976 (by Magistrate Smith) which set aside the order reopening the estates. Respondents alleged that they had been informed by appellant in early July 1976 that a pleading responsive to the May 6 petitions would soon be forthcoming, but that they never received notice of the July 14 motion or the July 16 order. Respondents alleged that notice of these actions was gained only upon their investigation of the court files following the 1978 amendments.

In response to respondents' motion of September 8, 1978, Magistrate Smith ruled on October 18 that a petition alleging fraud had been filed by respondents but had nev-er received a hearing, and that an ex parte order was entered dismissing respondents' petition. The court stated that since respondents' petition alleged fraud, no statute of limitations was applicable under I.C. § 15–1–106.[3] Therefore the ex parte order of July 16, 1976 was set aside, the estates reopened, and respondents granted a hearing on the question of fraud. Appellant sought reconsideration or amendment of this decision, which Magistrate Smith denied on November 6. Appellant then appealed to the district court from the magistrate court's decision of October 18 and its decision not to reconsider.

On April 20, 1979, District Judge Oliver issued a memorandum decision and order stating that under relevant provisions of the I.R.C.P. and Idaho Code, the magistrate court did not err in reopening the estates and ruling that respondents were entitled to a hearing on the question of fraud or in refusing to reconsider that decision. Both the October 18 and November 6 decisions were affirmed and the matter remanded to the magistrate court for the hearing on fraud. Appellant appeals the decision of the district court.

Appellant makes a number of assignments of error on appeal, all of which are directed toward the conclusion that the magistrate court's order reopening the estates, and the district court's affirmance of that order on appeal, was in error. An analysis of the propriety of the reopening of the estates for hearing on the question of fraud requires an understanding of the ba-

2. The record on appeal does not contain the order reopening the estates as requested by respondents in their May 6 petitions. At any rate, as noted above, Magistrate Smith set aside any such order reopening the estates on July 16, 1976, in response to appellant's motion of July 14.

It might also be noted that the ex parte nature of this motion and order is contested and will be discussed *infra*. In brief, the motion, dated July 14, was both filed with the court and signed by the magistrate on July 16. The certificate of mailing to respondents' attorney attached to this motion is dated July 16 as well.

3. The magistrate court apparently misread the last line of I.C. § 15–1–106 which states that the section has no bearing on remedies relating to fraud "practiced upon a decedent during his lifetime" affecting succession of the estate. However, as discussed *infra*, the conclusion of the magistrate that the reopening of the estates were not barred by relevant statutes of limitation, including that set forth in I.C. § 15–1–106, was correct. Where the decision of the lower court is correct but premised upon a different theory, it will be affirmed on the correct theory. *In re Revello*, 100 Idaho 829, 606 P.2d 933 (1979); *Eimco Corp. v. Sims*, 100 Idaho 390, 598 P.2d 538 (1979).

**546**

sic structure of the Idaho Probate Code, I.C. § 15–1–101 *et seq.* and the various procedures authorized under and requirements set forth by that act.

■ In very general terms, the Idaho Probate Code [4] provides for both informal and formal procedures. *See* I.C. § 15–1–201(19) and (23). The formal process of admitting wills to probate, appointing personal representatives, and settling estates is preceded by notice to all interested parties and, after full adversarial judicial proceedings, the determinations made bind notified parties. In contrast, the informal proceedings for determining testacy, appointing personal representatives, and closing the estate do not generally [5] have notice requirements or necessarily take place before a judge. Rather, these proceedings are basically ex parte and handled in an administrative as opposed to adversarial manner. Upon settlement and distribution of the estate under this type of proceeding, the determinations made have no res judicata effect but rather are protected by various statutes of limitation.

Confusing the question to a degree is the fact that the formal and informal procedures may be combined in the administration of a given estate. For example, regardless of the formal or informal nature of the probate itself, the personal representative may be appointed informally. (Indeed, this is often done since formal appointment is of value only when the position is contested; the powers and responsibilities of the personal representative do not vary depending upon the method of his appointment.) Another common blend of procedures, and one attempted below, is to informally probate a will or determine heirship and infor-

mally appoint a personal representative, yet formally close the estate in order to gain the conclusiveness granted such a procedure and avoid the need to rely upon the limitation periods provided for by informal closing.

In the instant case, administration in both estates was initiated under the informal process. Geneese Taylor applied to the court in the estate of W. R. Cahoon for an informal statement of intestacy where the estate was entirely community property and a spouse survived the decedent. *See* I.C. § 15–3–301. Taylor also applied for informal appointment as a personal representative. Similarly, Gary Cahoon and Howard Armstrong applied to the court for informal appointment as personal representatives and for informal probate in the estate of Venita Cahoon. The process thus initiated under I.C. § 15–3–301 application [6] is ex parte, in that no notice of the application is generally required.[7] The magistrate, upon such application, is to review the allegations made and, upon determining that the requirements of I.C. §§ 15–3–302 and 303 are met, is then to issue the statement requested.[8] If the application is flawed or other problems found, the application is to be declined. I.C. § 15–3–305; § 15–3–302.

■ Here statements of informal probate in Venita's estate and informal determination of intestacy and heirship in W.R.'s estate were properly issued upon the applications of Geneese Taylor and Gary Cahoon. Generally, upon issuance of statements of informal probate or determination of heirship, notice to all heirs and devisees must be given. I.C. § 15–3–303A states:

"Notice required.—Upon issuance of a statement of informal probate if no let-

---

4. The Uniform Probate Code as adopted by the Idaho legislature, 1971 Sess. Laws, ch. 111, p. 233.

5. *Cf.* I.C. § 15–3–303A, discussed *infra*; I.C. § 15–3–204 ("demanded notice").

6. Informal proceedings are characterized by the use of "applications," not requiring notice, followed by issuance of informal orders by the registrar. In contrast, formal proceedings are initiated by "petition," with notice, resulting in

adjudicated formal orders. See, *e.g.*, I.C. § 15–1–201(1), (19), (23), and (35).

7. A potentially interested party may file a "demand" for notification of such matters, I.C. § 15–3–204, § 15–3–306, but such a process is not involved in the present case.

8. As explained in I.C. § 15–3–301, various informal statements (of testacy, of intestacy, or of appointment) may be sought.

ters are issued to a personal representative or determination of heirship of community property, the applicant must give notice to all heirs and devisees of the admission of the will to probate or the determination of heirship of community property. This information shall be sent by ordinary mail to each of the heirs and devisees whose address is reasonably available to the applicant. The applicant shall be responsible to any heir or devisee damaged by failure of the applicant to give proper notice under this section."
However, under the language of this section, the requirement of notice to the heirs and devisees is not applicable here since in both estates letters were issued to personal representatives. The partial exclusion of the notice requirement in I.C. § 15–3–303A when letters are issued is due to a related notice requirement in I.C. § 15–3–705, applicable upon appointment, which essentially achieves the same result. Notice to the heirs and devisees, therefore, was still required in the present case by I.C. § 15–3–705 which states:

"Duty of personal representative—Information to heirs and devisees.—Not later than thirty (30) days after his appointment every personal representative, except any special administrator, shall give information of his appointment to the heirs and devisees, including, if there has been no formal testacy proceeding and if the personal representative was appointed on the assumption that the decedent died intestate, the devisees in any will mentioned in the application for appointment of a personal representative. The information shall be delivered or sent by ordinary mail to each of the heirs and devisees whose address is reasonably available to the personal representative. The duty does not extend to require information to persons who have been adjudicated in a prior formal testacy proceeding to have no interest in the estate. The information shall include the name and

address of the personal representative, indicate that it is being sent to persons who have or may have some interest in the estate being administered, indicate whether bond has been filed, and describe the court where papers relating to the estate are on file. The personal representative's failure to give this information is a breach of his duty to the persons concerned but does not affect the validity of his appointment, his powers or other duties. A personal representative may inform other persons of his appointment by delivery or ordinary first class mail."
"COMMENT TO OFFICIAL TEXT

This section requires the personal representative to inform persons who appear to have an interest in the estate as it is being administered, of his appointment. Also, it requires the personal representative to give notice to persons who appear to be disinherited by the assumption concerning testacy under which the personal representative was appointed. The communication involved is not to be confused with the notice requirements relating to litigation . . . ."

The definitional section of the act, I.C. § 15–1–201, provides the following definition of "heirs":

"(21) 'Heirs' mean those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent."

In this case, the status of respondents comes within the concept of heirship, for should the estates of W. R. and Venita pass under the statutes relating to intestacy, the children of Kathryn Seaton would be entitled to take as well as Gary Cahoon and Geneese Taylor, and thus were entitled to notice under I.C. § 15–3–705. *See* I.C. § 15–2–103. This conclusion is supported as well by the above quoted comment to I.C. § 15–3–705, which manifests an intent that all potentially interested persons be appraised of the appointment.[9] Under I.C.

---

**9.** Reference could also be made to I.C. § 15–1–201(24) which defines "interested persons" as: "heirs, devisees, children, spouses, creditors, beneficiaries and any others having a proper-

ty right in or claim against a trust estate or the estate of a decedent, ward or protected person which may be affected by the proceeding. It also includes persons having pri-

§ 15–3–705, the appointed party is to provide notice by mail to those persons interested in the estate when their names and addresses are known or can be readily ascertained.[10] The record reflects, in the present case, that no notice as required by I.C. § 15–3–705 was ever given, even though the identity, and interest, of respondents was clearly known. Appellant makes no argument justifying this failure and an independent review of the record discloses none.

This lack of notice as required by I.C. § 15–3–705 is but one failure disclosed by the record. Appellant also attempted to formally close the estate, which requires, *inter alia*, the sending of notice in accord with I.C. § 15–1–401 to all interested persons. I.C. § 15–3–1001. While the appellant stated in petitioning the court that such notice would be sent, the record does not indicate that this was done.[11] Yet another problem arises due to the statement in appellant's petition for settlement of Venita's estate to the effect that all debts had been paid. The record shows that the check for the $8,000 "debt" to respondents was tendered almost two months after this statement to the court.

The essential question on appeal thus becomes whether these failures provide a sufficient ground for reopening the estates. While the probate code does not specifically answer the question, I.C. § 15–1–103 notes that general provisions of law are supplementary to the provisions of the code. Thus our determination may be aided by prior Idaho precedent as well as judicial construction of probate provisions in other jurisdictions.

Prior to the enactment of the uniform act by the Idaho legislature, this court considered the problem of lack of notice to potential heirs and concealment of information from the court concerning those heirs. In *Gerlach v. Schultz*, 72 Idaho 507, 244 P.2d 1095 (1952), a single heir administered the estate of a decedent and, by alleging that he was the sole heir, succeeded in having the entire estate distributed to himself even though he was aware at that time of the existence of a number of other heirs. The administrator neither informed the court of the other heirs, nor informed the heirs of the probate proceedings (indeed, he misrepresented the very nature of the estate to them). An action was instituted by the excluded heirs against the administrator subsequent to the closing of the decedent's estate which sought damages or, alternatively, to impose a trust upon the estate property the administrator had received. This court saw the issue presented in *Gerlach* as whether the acts alleged constituted fraud sufficient to warrant a court of equity granting appropriate relief. Noting the fiduciary responsibilities on the part of the administrator running to the court as well as to the other potential heirs, the court observed that the administrator had actively concealed relevant information from the court thus causing the entirety of the estate to pass to him. These acts the court held, unquestionably constituted extrinsic fraud upon the probate court and the other heirs. The action for equitable relief was held proper. 72 Idaho at 511–15, 244 P.2d at 1097–99.

In *Spencer v. Spencer*, 91 Idaho 880, 434 P.2d 98 (1967), a probate court order con-

ority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding."
See also *Miller v. Martin*, 93 Idaho 924, 926, 478 P.2d 874 (1970), (defining interested person for probate purposes prior to 1971).

**10.** Compare I.C. § 15–1–401 specifying a similar manner of notice required in formal proceedings.

**11.** Appellant argues generally that respondents had actual or constructive notice of the probate procedures. Suffice it to say that constructive notice is insufficient under the above statutory provisions and that the allegations of actual notice are conjectural in nature and based solely on inferences from some of the documents of record. We accept neither argument as a justification for the appellant's failures to meet notice requirements of the probate code.

firming the sale of a decedent's partnership interest to the surviving partners was collaterally attacked in an action seeking recission of the sale or, in the alternative, damages. The plaintiffs in that action alleged that the probate court order was the result of negligence on the part of the executor of the estate, the concealment of information by the surviving partners, and the failure of the court to properly supervise the sale. In response to the executor's claim that the complaint failed to plead sufficient grounds to sustain a collateral attack upon the order, this court stated:

"A probate court order may be set aside in equity if the probate court lacked jurisdiction to enter it, or if the order was obtained by extrinsic fraud. Appellants allege both.

Their complaint says the probate court did not follow required procedure and S. R. Spencer's minor children were not represented at the sale confirmation proceedings. These allegations may be construed as a claim of lack of jurisdiction. And considering the fiduciary responsibilities owed appellants by M. R. Skelton and respondent Floyd E. Skelton, appellants' claims of willful non-disclosure plead extrinsic fraud.

What facts will appear on trial of course we do not know. This opinion only shows appellants' complaint sufficiently alleges grounds for legal relief." (Footnotes omitted.) 91 Idaho at 885, 434 P.2d at 103.

Both cases recognize that equity may treat allegations of lack of notice or failure to disclose relevant information as constituting fraud upon the court or the unnotified party. An action based upon such grounds is authorized in regard to probate matters by I. C. § 15–1–106 which states:

"Effect of fraud and evasion.—Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within two (2) years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five (5) years after the time of commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate."

■ This court views respondents' petition filed in the magistrate court seeking to set aside the decrees of settlement and distribution closing the estates, and to reopen those estates, to be a proper method of seeking "appropriate relief against the perpetrator of the fraud" under this section. In the present case, as in *Gerlach* and *Spencer, supra,* this court recognizes a right to seek relief from probate judgments allegedly obtained through fraud and marked by a lack of required notice. This conclusion is supported by the results reached in analogous cases from other jurisdictions. See, *e.g., In re Estate of Riddle,* 288 Or. 687, 607 P.2d 1370, 1373–1374 (1980); *In re Estate of Holmes,* 599 P.2d 344, 346–7 (Mont. 1979); *Invancovich v. Meier,* 122 Ariz. 346, 595 P.2d 24, 26–7 (1979); *In re Estate of Fehling,* 34 Colo.App. 445, 528 P.2d 407, 409 (1974); *In re Estate of Walker,* 10 Wash. App. 925, 521 P.2d 43, 46–7 (1974); *Hesthagen v. Harby,* 78 Wash.2d 934, 481 P.2d 438, 442–445 (1971); *Freitas v. Gomes,* 52 Haw. 145, 472 P.2d 494, 497–99 (1970).

■ In light of appellant's contentions on appeal, the manner in which respondents actually proceeded in regard to the allegations of fraud must also be examined. Respondents here petitioned in May 1976 for the reopening of the estates on the grounds of fraud, misrepresentation and non-disclosure. Such action, as determined *supra,* was an appropriate means of raising the question of fraud and seeking relief, and was timely since commenced within two years of the discovery of the fraud. I.C.

§ 15–1–106.[12] Following this attempt to reopen the estates, some communication apparently took place between counsel through which respondents were informed that a responsive pleading to their petition would soon be forthcoming. Apparently this "responsive pleading" was an "ex parte" application to the magistrate court to set aside the order reopening the estates, which application was granted on July 16, 1976.

Respondents contend that they never received notice of appellant's motion or of the action taken by the court on July 16. Indeed, respondents allege that, until they examined the case files in the latter part of 1978 following receipt of amended inventories for the estates, they never knew their reopening of the estates had been nullified. This entire argument stands opposed to certificates of mailing attached to appellant's motion and the granted order of July 16 which indicate the documents were sent, though possibly after the fact, to respondents' attorney. Yet this record, as well as the contention of respondents that they received no notice, was before the magistrate court below. That court determined that respondents had filed a petition alleging fraud, that no hearing had ever been held concerning those allegations, and that the petition was dismissed by an "ex parte order," i.e., without notice to respondents. This is essentially a factual question and, while we certainly would have welcomed greater explanation of the tortured proceedings and actions of the parties below, we are not prepared to reject the magistrate court's conclusion that respondents had no notice of the July 16 order.[13]

■ The extraordinary lapse of time following respondents' 1976 petitioning, ending with the renewal of active concern in 1978, might be partially explained under respondents' theory that they received no notice of the July 1976 actions and instead continued to believe that the estates were reopened as per their own May 1976 motions. Yet it is almost inconceivable that a party contesting the probate of an estate and alleging the type and degree of fraud contended here would allow over two years to pass, waiting for a promised responsive pleading, without taking some action or at least further investigating the matter. Appellant seizes upon this lapse of time and contends that respondents are thus barred by the statutes of limitation in I.C. § 15–1–106 and § 15–3–1005; by that limitation in I.R.C.P. 60(b) for relief from a judgment on the basis of fraud; and by the equitable principle of laches.

In accord with our discussion above, we conclude that the action for relief from the alleged fraud was commenced in May of 1976 upon respondents' petitioning of the magistrate court. The commencement of the action thus comes within the period established by I.C. § 15–1–106. The limitation set forth in I.C. § 15–3–1005 is inapplicable since that section appears to concern informal closing of an estate. (See, e.g., I.C. § 15–3–1005, Comment to Official Text, noting that a personal representative may use I.C. § 15–3–1001, the formal closing provision, to secure greater protection.) In any event, the last sentence of I.C. § 15–3–1005 excludes the operation of the limita-

12. Both the statute and prior common law recognize that the statute of limitation for actions premised on fraud commences to run only from the time the fraud is actually discovered or in the exercise of due diligence should have been discovered. I.C. § 15–1–106; *Nancy Lee Mines, Inc. v. Harrison*, 95 Idaho 546, 547, 511 P.2d 828 (1973); *Gerlach, supra*, 72 Idaho at 514, 244 P.2d at 1098. Here, given appellant's failure to provide notice of the estate proceedings to respondents, the allegations of misrepresentation, fraud and failure to disclose information within those proceedings were necessarily predicated upon respondents gaining knowledge of the final closing of the estates.

This knowledge was gained, it would appear, in early 1976 upon respondents' receipt of the $8,000 check from appellant. The present action was commenced soon thereafter.

13. The magistrate court also stated that a decree of distribution was entered apparently in the hiatus between the respondents' petition alleging fraud and the dismissal of that petition. Appellants argue this is a major error tainting the rest of the court's decision. While we find the reference confusing, we are not prepared to impart to its presence the significance appellant seeks.

tion period when fraud, misrepresentation and inadequate disclosure, as alleged here, are involved. Similarly, I.R.C.P. 60(b) is inapplicable since the last sentence thereof eliminates the effect of the bar when fraud upon the court is involved. And, finally, we find no reason to apply the equitable doctrine of laches in this situation as the prior actions of appellant fail, in our view, to justify the intervention of equity in his behalf. By this conclusion, however, we do not mean to condone what appears to be an almost inexcusable lack of prosecution on the part of respondents; we merely note that the doctrine of laches is unavailable to foreclose hearing of respondents' allegations.

It is the conclusion of this court that, under the record before us, respondents have sufficiently alleged such failures to abide by the provisions of the Idaho Probate Code concerning notice and disclosure as to justify the seeking of equitable relief. We further find that respondents' actions to reopen the estates and gain hearing of their allegations of fraud were timely commenced. We therefore find no error in the magistrate court's decision to reopen the estates for a hearing on the question of fraud, or in the district court's affirmance of that decision. Respondents' request for attorney fees on appeal is denied. Costs to respondents.

BAKES, C.J., and BISTLINE, DONALDSON and SHEPARD, JJ., concur.