2000-NMCA-030

999 P.2d 1057

**In the Matter of the ESTATES OF Marie Ann BROWN and Paul Brown, deceased, and concerning Julia E. Merson, Personal Representative, Appellants,**

v.

**Maria DICKINSON and Larry Brown, Appellees.**

No. 19,947.

Court of Appeals of New Mexico.

March 3, 2000.

Cynthia A. Fry, Albuquerque, William N. Henderson, The Henderson Law Firm, Albuquerque, for Appellants.

Michael Allison, Barnett & Allison, Albuquerque, for Appellees.

*OPINION*

ARMIJO, Judge.

{1} This interlocutory appeal arises out of a dispute among heirs over the distribution of their parents' estates. The personal representative appeals from an order of the district court declining to accord finality to the personal representative's proposal for

distribution of estate assets. The central question we are asked to determine in this appeal is whether the thirty-day time limit imposed in NMSA 1978, § 45–3–906(C) (1993) can be extended by order of the court. We determine that Section 45–3–906(C) does not strictly apply to the facts of this case and therefore do not address the matter of the court's authority to extend the time limit. We affirm the decision of the district court on alternative grounds recited in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### The consolidated estates

{2} Marie Ann Brown died intestate in 1981. She was survived by her husband, Paul Brown, and by their three children: two adult daughters, Julia Merson and Marie Dickinson, and one minor son, Larry Shoofa Brown. By an order of the Second Judicial District Court dated June 3, 1983, Marie Dickinson was appointed personal representative of her mother's estate. Letters of Administration and Acceptance appointing Marie Dickinson as personal representative were issued on June 13, 1983.

{3} Paul Brown died on October 10, 1989. On January 18, 1991, Marie Dickinson filed a Petition of an Heir for Adjudication on Intestacy and Appointment of Personal Representative. On February 20, 1991, the district court entered an Order of Intestacy and Appointment of Personal Representative. Letters of Administration and Acceptance, appointing Marie Dickinson as personal representative of her father's estate, were issued on February 20, 1991.

{4} On August 1, 1995, Julia filed an unopposed motion seeking the consolidation of her parents' estates. An order consolidating the two estates was entered that same day. Also on August 1, 1995, Julia filed a Motion for Removal of Personal Representative and Appointment of Movant, therein seeking Marie's removal and her own appointment as personal representative of her parents' estates. On December 12, 1995, the district court entered an order removing Marie Dickinson and appointing Julia Merson as personal representative of the estates of Marie Ann Brown and Paul Brown in an unsupervised administration. Letters of Administration and Acceptance, appointing Julia Merson as personal representative, were issued on December 19, 1995.

{5} On June 12, 1996, Julia filed a Petition to Surcharge Former Personal Representative. Therein, she alleged numerous acts of negligence, malfeasance, and waste, among other acts and omissions relating to the manner in which Marie exercised her duties as personal representative. Julia sought an order of the court surcharging Marie's inheritance from the estates for all amounts which might be proved at trial. The motion further sought judgment against Marie for any amounts over and above the amount of her inheritance, in addition to costs and attorney's fees. Approximately a year later, on June 25, 1997, Julia filed a Motion to Dismiss Petition to Surcharge with Prejudice, in which she recited that the parties had "fully and completely settled any and all claims regarding the Petition to Surcharge filed herein." The motion further recited that "[t]he parties have requested some of the Court's time for the Court's guidance regarding further administration of the Estate and prospective division of estate assets between the two remaining heirs, Larry Shoofa Brown and Julia E. Merson."

{6} On July 24, 1997, Larry submitted a request for hearing as to "Preliminary Matters." The district court set the hearing for September 23, 1997. During the hearing, both Julia and Larry were represented by counsel. Counsel sought the district court's approval of the settlement disposing of the Petition to Surcharge.

{7} After addressing the settlement, counsel discussed their respective views about the actions required to value and distribute the remainder of the estates' assets. The parties were especially concerned with problems involved in the disposition of several tracts of land in Rio Arriba County, which were the principal asset of the parents' estates. Certain of the tracts were of dubious value due to questions about the state of title to the tracts. It appears from the transcript of the September 23, 1997 hearing that counsel understood and agreed to, and the district court

endorsed, the following procedure: the personal representative would file a supplementary inventory; Larry and Julia each would submit suggestions for distribution to the court; and one or both of the parties would thereafter petition the court for an order distributing assets and closing the estate. This stipulation is embodied in orders filed October 23, 1997 and November 21, 1997.

{8} On January 13, 1998, Julia Merson, as personal representative, submitted a Supplemental Inventory and Accounting. On February 6, 1998, Larry Brown filed his Suggestions for Distributions. Therein, he challenged the Supplemental Inventory and Accounting and proposed that the assets of the estates be liquidated and the proceeds distributed. He requested that any hearing on the distribution be postponed until after the assets were liquidated to cash, at which time, the district court could "entertain a hearing on these issues to the extent that the parties remain in dispute." On February 9, 1998, Julia filed her Personal Representative's Suggestions for Division of Assets and Her Plan for Closing the Estates. In this pleading, she recited that any distribution of estate assets would be "with the approval of the Court."

{9} On February 9, 1998, William Henderson entered his appearance on behalf of Julia Merson, replacing Bruce Redd, the attorney who had represented her at the September 23, 1997 hearing. Under cover of a letter from Henderson dated April 15, 1998, Julia served Larry Brown's counsel with a pleading entitled "Proposal for Distribution." The proposal did not advise the recipient that a response was expected or required or that objections were to be filed by a particular date. The proposal recited that Julia "will document all of her actions to the Court for the Court's review and *will only close the estates with the Court's approval.*" (Emphasis added.)

*The flurry of assertions and responses exchanged by the parties*

{10} On June 10, 1998, Julia filed an affidavit, stating that her proposal was mailed to Larry's counsel on April 15, 1998, and that having received no written objections, she was proceeding to implement the proposal. Julia's attorney, in accordance with her Proposal for Distribution, delivered copies of various deeds, an assignment conveying title to numerous vehicles, and a check for $43,-501.98. Later that day, Larry's attorney filed a Response and Objection to Proposal for Distribution. On June 19, 1998, he filed a Supplemental Response and Objection to Proposal for Distribution and Conveyances. On June 25, 1998, he filed a Motion for Enlargement of Time to Object to Proposal for Distribution. On July 14, 1998, Julia filed a Personal Representative's Responses to Larry Shoofa Brown's (1) Motion for Enlargement of Time to Object to Proposal for Distribution; (2) Response and Objection to Proposal for Distribution; and (3) Supplemental Response and Objection to Proposal for Distribution and Conveyances. On July 31, 1998, Larry filed a Reply to Personal Representative's Responses. On August 6, 1998, Julia filed a Brief in Support of Personal Representative's Motion for Court to Rule on the Finality of Personal Representative's Proposed Distribution.

{11} On August 7, 1998, the district court held a hearing on Julia's proposal and Larry's responses. Julia argued that Larry was barred from objecting to her proposal by Section 45-3-906(C). Larry responded that Julia's attempt to proceed under Section 45-3-906(C) was inconsistent with the procedure agreed upon and adopted at the September 23, 1997 hearing and that Julia's proposal was substantively unfair because "what this personal representative has done is to keep everything of value in this estate for herself as beneficiary and to give [Larry] Brown nothing of value other than an amount of cash, which does not even begin to approximate the value of his interest in this estate." At the conclusion of the hearing, the court took the matter under advisement. In a letter ruling dated August 18, 1998, the district court ruled that "The Motion to Extend Time in opposition to the proposed distribution is granted." On November 5, 1998, the court entered a written order denying Julia's request that the district court declare her proposed distribution to be final, deeming Larry's responses to the proposed distribu-

tion to be timely filed under Section 45–3–906(C). The court certified the question of law presented by its order as appropriate for interlocutory appeal and stayed further proceedings. This interlocutory appeal followed.

## DISCUSSION

■ {12} The Uniform Probate Code (UPC), NMSA 1978, §§ 45–1–101 through 45–8–9 (1975 as amended through 1998), affords parties·interested in the administration of an estate some degree of flexibility. Proceedings relating to the administration of an estate may be either "informal" (conducted without notice to interested persons) or "formal" (conducted before a judge with notice to interested persons). *Vieira v. Estate of Cantu,* 1997–NMCA–042, ¶ 7, 123 N.M. 342, 940 P.2d 190. Any person with a legal interest in a decedent's estate may petition the district court for orders in formal proceedings within the district court's subject matter jurisdiction. *See* § 45–3–105. Flexibility is enhanced by the express provision that each formal proceeding before the district court is independent. *See* § 45–3–107. Thus, the UPC contemplates that the administration of a single estate can be a hybrid, involving both informal and formal proceedings. *See In re Estates of Cahoon,* 102 Idaho 542, 633 P.2d 607, 611 (1981). "[F]ormal proceedings ... may be employed at any stage of an estate administration; these will be ended after the particular purpose has been served. Formal proceedings may be, so to speak, 'turned on and off' as necessity requires...." 1 *Uniform Probate Code Practice Manual* 313 (Richard V. Wellman ed., 2d Ed.1977).

*The thirty-day time limit imposed by Section 45–3–906(C) and the parties' stipulations*

{13} The parties' arguments focus on the following provision of the Uniform Probate Code:

After the probable charges against the estate are known, the personal representative may mail or deliver a proposal for the distribution [of state assets] to all persons who have a right to object to the proposed distribution. The right of any distributee to object to the proposed distribution on the basis of the kind or value of asset he is to receive, if not waived earlier in writing, terminates if he fails to object in writing received by the personal representative within thirty days after mailing or delivery of the proposal.

Section 45–3–906(C).

{14} Julia asserts that the thirty-day time limit provided in Section 45–3–906(C) for responding to a proposed plan of distribution is applicable to the facts of this case. She further asserts that the time limit cannot be extended. She concludes that Larry's failure to serve a written response within thirty days of April 15, 1998—the date her attorney mailed a copy of her proposal to Larry's attorney—absolutely terminated Larry's right to challenge her proposed plan of distribution.

■ {15} Julia's position ignores the effect of the September 23, 1997 stipulation, by which the parties agreed to submit the determination of a final distribution of estate assets to the district court for resolution and Larry's actions in response to the stipulation. Pursuant to that stipulation, Larry filed his February 6, 1998 Suggestions for Distributions, which we construe as a petition pursuant to Sections 45–3–105 and 45–3–1001(B)(2), for a formal determination of issues relating to settlement and distributions of his parents' estates. *See* § 45–1–201(A)(35) ("Petition" means written request to the probate court for an order after notice); *see also Mayfield v. Mayfield,* 108 N.M. at 249, 771 P.2d at 182 (1989) (recognizing principle of "substantial compliance" where record shows that claimant invoked exercise of district court's authority within statutory time period). Once a petition has been filed pursuant to Section 45–3–1001(C), an order approving distribution of an estate may be entered only after "notice to all interested persons and subsequent hearing." Under the circumstances of the present case, we conclude that the district court could have viewed the procedures provided by Section 45–3–906(C), relating to proposals for distribution in *informal* proceedings, as inapplicable. Those circumstances are that a distributee has requested, and the personal representative has agreed to, adju-

dication of the distributee's share of estate assets in a *formal* proceeding, and neither the parties nor the district court have agreed to or ordered any change in the nature of the proceeding. Here, a pleading requesting a formal adjudication of his share of estate assets—Larry's February 6, 1998 suggestions—had been filed well prior to the April 15, 1998 delivery of Julia's proposal to Larry's attorney. Thus, as of April 15, 1998, the questions of the nature and extent of Larry's and Julia's respective shares of estate property had already been committed to the district court for disposition in a formal proceeding pursuant to the parties' September 23, 1997 stipulation and Larry's Suggestions for Distribution. "Naturally, when an informal proceeding and a formal proceeding are in direct conflict, the formal proceeding supersedes its corresponding informal procedure." Lawrence H. Averill, Jr. *Probate Code in a Nutshell* 278 (3d ed.1993). Julia's attempt to revert to the informal procedures set out in Section 45–3–906(C) needlessly and improperly complicated the Section 45–3–1001(C) proceeding initiated by Larry.

{16} The parties have cited, and we have found, only a single case applying Section 45–3–906(B) of the UPC—the section of the UPC from which Section 45–3–906(C) is taken. In that case, *In re Estate of Marsh,* 247 Neb. 17, 524 N.W.2d 571 (1994), the Nebraska Supreme Court applied the corresponding provision of the Nebraska Probate Code. The Nebraska Supreme Court held, in the context of a supervised administration, that a distributee's failure to object within thirty days to a proposed "schedule of distribution" barred the distributee from objecting to the terms of the distribution. However, *Marsh* applied the thirty-day deadline of Section 3–906(B) of the UPC without any meaningful analysis of why Section 3–906(B) should apply in situations where the final distribution of estate assets has been submitted to the court for adjudication. We decline to apply the rationale in *Marsh* to the present case.

*Our holding*

{17} In conducting our review, we recognize that the district court appears to have assumed that the thirty-day deadline set out in Section 45–3–906(C) was applicable in a formal proceeding to adjudicate distribution, and that in denying Julia's motion, the district court believed it was "extending" the deadline imposed by Section 45–3–906(C). As explained in this opinion, because the deadline in Section 45–3–906(C) was inapplicable, the district court did not have to "extend" the thirty-day period set out in Section 45–3–906(C) in order to find that Larry's objections were timely filed.

■ {18} We may affirm the district court on an alternate ground where it has reached the correct result and where reliance on an alternate ground would not be unfair to the appellant. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). Here, our review of the record discloses that the parties submitted the question of distribution of estate assets to the district court and that the parties stipulated to, and the district court adopted, a procedure for settling the dispute over distribution of estate assets. The inapplicability of the deadline set forth in Section 45–3–906(C) was raised in the district court and, accordingly, we see no unfairness to Julia in affirming on this alternate ground. Because we determine that Section 45–3–906(C) does not strictly apply to the circumstances of this case, we need not reach the issues of whether the district court had the power to extend the thirty-day deadline of Section 45–3–906(C) or whether exercise of such power would have been appropriate under the facts of this case.

## CONCLUSION

{19} For the reasons set forth above, we affirm the judgment of the district court.

{20} **IT IS SO ORDERED.**

PICKARD, C.J., and APODACA, J., concur.