In the Matter of the Estate of Edwin O. HOFFAS, Deceased.

Omar OLSON, Tenny Olson, Elvera Sophia Hextell, Alma Elizabeth Bell, and Carla Apanian, Appellants,

v.

ESTATE OF Edwin O. HOFFAS, Appellee.

Civ. Nos. 870192, 870206.

Supreme Court of North Dakota.

April 18, 1988.

Caldis, Arneson & Tingum, Ltd., Grand Forks, for appellants; submitted on briefs.

Dosch Law Office, Devils Lake, for appellee; submitted on briefs.

LEVINE, Justice.

We consider consolidated appeals from an order of the Bottineau County court determining heirs, dated May 20, 1987, and judgment ordering repayment to the Estate of Edwin O. Hoffas for improper distributions. We affirm.

Edwin O. Hoffas died intestate on November 22, 1981, in Bottineau County, North Dakota. Hoffas, never having married, was survived only by lineal descendants of his maternal and paternal grandparents. Under NDCC § 30.1–04–03, half of his estate was to pass to the issue of his maternal grandparents and half to the issue of his paternal grandparents. Distribution on the maternal side was accomplished without incident, and is not disputed. At issue is the procedure underlying the distribution to the descendants of the paternal grandparents.

Hoffas was survived by nine first cousins: Thomas Olson, Elvera Hextell, Alma Bell, Carla Apanian, Emma Hanson, Josie Rierson, Emma Osterlund, Ella Bakke, and John M. Hoffas. He was predeceased by twenty-five first cousins who left many de-

scendants surviving him. The search for these individuals was not complete on October 8, 1985, when Wallace O. Nelson, the personal representative, petitioned the Bottineau County court for determination of Hoffas' heirs. Notice of the heirship hearing was published for three weeks in November in the weekly Bottineau County newspaper. A hearing was held in December 1985 and, on January 22, 1986, Bottineau County Court Judge A.S. Benson issued a memorandum opinion and order setting forth the general scheme of distribution and stating that distribution should be made after review by the county court. A list of over one hundred twenty names of Hoffas' first and second cousins, with accompanying addresses, was filed with the county court April 14, 1986.

On April 21, 1986, Judge Benson ordered that a final report and account, and a petition for distribution, be filed at the earliest possible time, and that notice of the final report and account be mailed to the heirs "determined" in the January 22 order. On April 22, 1986, Judge Benson ordered the attorney for the personal representative to file an affidavit naming the persons to whom distribution should be made, but to exclude from the affidavit all second cousins.[1]

Accordingly, the affidavit of heirship named the nine first cousins who survived Hoffas as well as Anna Larson, mistakenly believed to be a surviving first cousin. Thomas Olson (first cousin) died during probate proceedings, and was survived by two sons (second cousins), Omar Olson and Tenny Olson. Emma Hanson (first cousin) also died during probate and was survived by a son, Edward Hanson (second cousin). The affidavit stated that Edward Hanson should take the share of his parent, and Omar Olson and Tenny Olson should succeed to their parent's share. Thus the affi-

davit named eleven heirs: the seven living first cousins, the three second cousins whose parents died during probate, and Anna Larson.

A petition for an order of distribution was filed May 28, 1986. Notice of the hearing was mailed only to the eleven persons named in the affidavit of heirship.

Judge Benson divided the paternal side of the estate into five shares of $54,489.20, one share for each aunt and uncle who left issue that survived Hoffas. On June 20, 1986 distribution was ordered and pursuant to the order, Tenny Olson, Omar Olson, Elvera Hextell, Alma Bell, Carla Apanian and Edward Hanson each received $27,244.60. Josie Rierson, Emma Osterlund, Ella Bakke, and John M. Hoffas each received $13,622.30. There was no distribution to Anna Larson. Judge Benson approved the distribution July 29, 1986.

After Judge Benson retired in January 1987, Judge Thomas K. Metelmann was designated to preside over the Hoffas probate proceedings. Judge Metelmann suspended the authority of the personal representative and appointed as special administrator, attorney Ronald Dosch, of Devils Lake, North Dakota. The judge also scheduled a hearing to review the orders previously issued and the hearings previously held by Judge Benson. Judge Metelmann reviewed the record and concluded that it contained neither an order determining heirs nor sufficient evidence to determine Hoffas' heirs, and that improper distribution had been made. He ordered a hearing to determine heirship and directed the special administrator to seek recovery of all distributions.

On March 6, 1987, notice of the heirship hearing was mailed to all living descendants of Hoffas' maternal and paternal grandparents whose names and addresses

---

1. Judge Benson's direction that the affidavit of heirs exclude second cousins, reflects the judge's conclusion that despite the fact that there were no surviving aunts or uncles, the estate was to be divided into as many shares as there were aunts and uncles who left children (first cousins) who survived Hoffas. If an aunt or uncle left grandchildren (second cousins) who survived Hoffas, whose parents (first cousins) had

*not* survived Hoffas, a primary share would not be allotted to that aunt or uncle, and hence the grandchildren (second cousins) would not inherit. Second cousins did, indeed, inherit under Judge Benson's scheme of distribution, but only those whose parent (first cousin) survived Hoffas and died during the probate proceedings and before distribution.

were known. One hundred sixty-one notices were mailed. On May 20, 1987, after the heirship hearing, Judge Metelmann issued an order containing the names and addresses of the seven first cousins, one hundred twenty-eight second cousins, and sixty-two third cousins entitled to inherit from Hoffas' estate.[2] He also ordered the ten distributees to show cause why the court should not order them to repay their distributions. Edward Hanson repaid the estate prior to the hearing to show cause and was discharged from further obligation.

On June 29, 1987, Judge Metelmann ordered judgment against the nine remaining distributees in the amounts of their respective distributions. Judge Metelmann concluded that recovery of the improper distributions was not barred. He directed entry of a final judgment against the nine distributees and made a Rule 54(b) certification that the judgment was final and appealable. Omar Olson, Tenny Olson, Elvera Hextell, Alma Bell, and Carla Apanian appealed.

The sole issue is whether Judge Metelmann was authorized to reconsider Judge Benson's order determining heirship (January 22, 1986) and orders for and approving distribution (June 20 and July 29, 1986).

### 1. Order Determining Heirship

Appellants argue first that Judge Benson's court gained personal jurisdiction over all Hoffas' heirs by notice mailed to all heirs known at the time of the heirship hearing, and by published notice of the

hearing for the benefit of heirs whose names or addresses were unknown, and that because no appeal was taken from the order determining heirs, the order of heirship is res judicata.

However, the order of January 22, 1986 did not determine Hoffas' heirs. It stated only that:

"All aunts and uncles on the maternal and paternal sides who left issue, shall receive equal shares and the share of each deceased aunt or uncle, who left issue, shall be left to the issue of that deceased person in equal shares by right of representation."

The order merely recites the statutory direction for inheritance by representation contained in NDCC § 30.1-04-06 (UPC 2-106). The order does not determine the heirs. Heirs are defined as those persons entitled under the statutes of intestate succession to the property of a decedent. NDCC § 30.1-01-06(18). A person, as defined in § 30.1-01-06(30) is "an individual, a corporation, an organization, or other legal entity." Instead of determining the individuals who are heirs, the order provides a generic scheme for distribution, but leaves unanswered which individuals shall inherit. *See* 2 UPC Practice Manual, Form 33 (2d ed. 1977).

We agree with Judge Metelmann's conclusion that there was no prior order determining heirs. We conclude that Judge Metelmann was authorized to determine heirs.[3]

---

**2.** While Judge Benson's distribution scheme initially divided the estate five ways, corresponding to the five deceased aunts and uncles who left surviving issue, Judge Metelmann divided the estate 34 ways, corresponding to the 34 first cousins who either survived Hoffas or left descendants who survived Hoffas.

**3.** Even had the January 22, 1986 order properly determined Hoffas' heirs, it would not have been res judicata, under NDCC § 30.1-15-12(2) (UPC 3-412), which states:

"Subject to appeal and subject to vacation as provided herein and in section 30.1-15-13, a formal testacy order under sections 30.1-15-09 through 30.1-15-11, including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's

estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs, except that:

.    .    .    .    .

2. If intestacy of all or part of the estate has been ordered, the determination of heirs of the decedent may be reconsidered if it is shown that one or more persons were omitted from the determination and it is also shown that the persons were unaware of their relationship to the decedent, were unaware of his death, or were given no notice of any proceeding concerning his estate, except by publication."

The omitted heirs were given no notice other than by publication, thereby subjecting the determination of heirs to reconsideration.

## 2. Distribution

Appellants defend Judge Benson's orders of June 20 and July 29, 1986, relating to distribution. They contend Judge Metelmann was without authority to alter those orders because of the doctrine of res judicata. Res judicata means that a valid, existing final judgment from a court of competent jurisdiction is conclusive, with regard to the issues raised, or those that could have been raised, and determined therein, as to the parties and their privies in all other actions. *See, e.g., Schiele v. First National Bank of Linton,* 404 N.W.2d 479 (N.D.1987); *Peacock v. Sundre Township,* 372 N.W.2d 877 (N.D.1985). The question becomes whether the Benson court acquired jurisdiction over the omitted heirs. Appellants argue that the court did through notice by publication, or vicariously through its jurisdiction over second cousins Omar Olson, Tenny Olson, and Edward Hanson under NDCC § 30.1–03–03(2)(c), or vicariously through its jurisdiction over personal representative Nelson, under NDCC § 30.1–03–03(2)(b).

■ In all formal estate proceedings,[4] the notice prescribed in NDCC § 30.1–03–01 must be given to every interested person, or to one who can bind an interested person as provided in NDCC § 30.1–03–03(2)(a) and (b). NDCC § 30.1–03–03(3)(a) (UPC 1–403). "Interested person" includes heirs. NDCC § 30.1–01–06(21). After notice to all interested persons and hearing, the court may enter an order determining the persons entitled to distribution of the estate and directing distribution. NDCC § 30.1–21–01(1) (UPC 3–1001). *See also* NDCC § 30.1–01–06(16). Thus, notice is required prior to any formal hearing or order.

Where notice is required, interested persons notified in conformity with NDCC § 30.1–03–01 are bound by orders of the court even though less than all interested persons are notified. NDCC § 30.1–12–06. A formal proceeding which is to be effective on all interested persons must follow reasonable notice to such persons. NDCC § 30.1–15–02 (UPC 3–402), Editorial Board Comment. Thus, proper notice gives the court jurisdiction over persons notified, and interested persons not notified of formal proceedings are not bound.

■ Under NDCC § 30.1–03–01, unless otherwise provided in the probate code, notice is given by mailing a copy to the person being notified, by delivering a copy personally to the person being notified, or, if the address or identity of any person is unknown and cannot be ascertained with reasonable diligence, notice by publication must be given at least once a week for three consecutive weeks in a newspaper of general circulation in the county where the hearing is to be held. Thus, notice is effected by publication only if the address or identity of the person is unknown and cannot be ascertained with reasonable diligence.

■ In this case, the names and addresses of the omitted heirs were known prior to the hearing on the petition for order of distribution. Yet, no notice of any kind was given to the omitted heirs. Even if notice by publication had been given, it would not have conferred jurisdiction over the omitted heirs. The Benson court therefore was without jurisdiction as to the omitted heirs.

■ Relying on NDCC § 30.1–03–03(2)(c), appellants argue that the notice mailed to second cousins Omar Olson, Tenny Olson, and Edward Hanson

4. "Formal proceedings" means those conducted before a judge with notice to interested persons. NDCC § 30.1–01–06(16). "Informal proceedings" means those conducted by the court for probate of a will or appointment of a personal representative without notice to interested persons. NDCC § 30.1–01–06(20). Informal proceedings are thus limited to two kinds of transactions: (1) admission of wills to probate and (2) appointment of personal representatives. *See also* 1 UPC Practice Manual (2d ed. 1977). These two events, if conducted informally, do not involve adjudication. By contrast, the term "formal proceedings" embraces all kinds of adjudicative proceedings. All formal proceedings involve advance notice to interested persons. NDCC § 30.1–12–06; NDCC § 30.1–15–02, Editorial Board Comment.

binds all omitted second cousins. We disagree.

Section 30.1–03–03(2)(c) provides:

"2. Persons are bound by orders binding others in the following cases:

. . . . .

c. An unborn or unascertained person who is not otherwise represented is bound by an order to the extent his interest is adequately represented by another party having a substantially identical interest in the proceeding."

The omitted second cousins were neither unborn nor unascertained. "Unascertained" means "not determined with certainty." *See* Black's Law Dictionary (5 ed.); Webster's Third International Unabridged Dictionary. The identity of the omitted heirs had been determined with certainty before the distribution hearing. Therefore, § 30.1–03–03(2)(c) is of no help to appellants.[5]

Appellants further argue that under NDCC § 30.1–03–03(2)(b), the omitted heirs are bound by the 1986 order for and approving distribution, because of notice given to personal representative Nelson.

"2. Persons are bound by orders binding others in the following cases:

. . . . .

b. To the extent there is no conflict of interest between them or among persons represented . . . orders binding a personal representative bind persons interested in the undistributed assets of a decedent's estate *in actions or proceedings by or against the estate* . . . ." [Emphasis added.] NDCC § 30.1–03–03(2)(b).

■ Appellants' reliance on this statute is misplaced. The proceedings held below are not "proceedings by or against the estate." While proceedings to appoint a personal representative, and to determine testacy, heirship, and distribution, are mat-

ters involving the estate, they are not proceedings by or against the estate. This is not a case where the estate has brought an action, or has been sued, so that notice to the personal representative would bind other heirs. We conclude that NDCC § 30.1–03–03(2)(b) does not apply to the proceedings below.

■ We hold that the omitted heirs are not bound by the prior orders of distribution because the Benson court was without personal jurisdiction over them. Therefore, the prior orders of distribution are not res judicata. *See Sturdevant v. SAE Warehouse*, 270 N.W.2d 794, 798 (N.D. 1978) (testator's brother, not made a party nor served notice of probate proceedings, is not bound by formal decree of distribution, and decree is not res judicata).

■ Appellants next argue that NDCC § 30.1–20–09 (UPC 3–909) precluded Judge Metelmann from redetermining distribution because distribution had been adjudicated. We disagree.

NDCC § 30.1–20–09 states:

"Unless the distribution or payment no longer can be questioned because of adjudication, estoppel, or limitation, a distributee of property improperly distributed or paid, or a claimant who was improperly paid, is liable to return the property improperly received and its income since distribution if he has the property . . . ."[6]

In interpreting a statute, words must be given their plain, ordinary and commonly understood meaning, and consideration should be given to the ordinary sense of statutory words, the context in which they are used, and the purpose which prompted their enactment. *Stutsman County v. State Historical Society*, 371 N.W.2d 321 (N.D.1985); NDCC § 1–02–02.

To adjudicate is to settle in the exercise of judicial authority, to determine finally.

---

5. For the same reason, we reject appellants' argument that the omitted heirs were adequately represented by third cousin Harold Simonson, who was asked to prepare Hoffas' family tree and had actual knowledge that Hoffas' estate was in probate.

6. The personal representative's act of making the distribution may be "authorized at the time" under NDCC § 30.1–18–03 (relating to the liability of a personal representative for certain official acts), but may still be "improper" under NDCC § 30.1–20–09. NDCC § 30.1–20–09, Editorial Board Comment.

*Leonard v. Leonard,* 88 Idaho 485, 401 P.2d 541 (1965).

The word "adjudication" in this statute necessarily implies a valid adjudication. As we have already decided, the distribution in this case was based upon defective notice. Because interested persons were not given notice of the hearing, the order did not bind them and was not res judicata. A non-binding order is not an "adjudication" under NDCC § 30.1–20–09. We conclude that § 30.1–20–09 does not preclude re-examination of an order of distribution based upon defective notice.

Accordingly, we affirm the order determining heirs and the judgment for repayment of prior distributions.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

VANDE WALLE, J., concurs in the result.