**Toby C. McADAM, Plaintiff and Appellant,**

v.

**George T. DYNES, Defendant and Appellee.**

Civ. No. 890072.

Supreme Court of North Dakota.

July 17, 1989.

Saefke Law Office, Bismarck, for plaintiff and appellant; argued by Frederick E. Saefke, Jr.

Freed, Dynes, Reichert & Buresh, P.C., Dickinson, for defendant and appellee; argued by Eugene F. Buresh.

ERICKSTAD, Chief Justice.

We granted Toby McAdam's petition to review a decision of the North Dakota Temporary Court of Appeals affirming a summary judgment in favor of George T. Dynes. *McAdam v. Dynes*, 445 N.W.2d 25 (N.D.1988). We reverse and remand.

Without executing a written fee agreement, Dynes represented McAdam in a claim against West River Management for wrongful discharge under the Fair Labor Standards Act. McAdam and West River Management ultimately settled the matter for $15,800. According to Dynes, that representation of McAdam resulted in total attorney fees and out-of-pocket expenses of $11,800. In 1986 Dynes received $8,300 of the settlement from West River and sent a release and letter to McAdam which provided, in part:

> "When I have the executed release back in my office I will release the settlement funds. As previously agreed, of the $8,300.00 we receive, $2,000.00 will be paid to you and the balance will be applied toward our expenses and attorney's fees."

McAdam signed the release and received $2,000 of those funds. In 1987 Dynes received the remaining $7,500 of the settlement and forwarded a check and release to McAdam with the following letter:

"Please endorse this check and return with the Release.

\* \* \* \* \* \*

"As we have agreed, we will forward you $2,000 of the settlement funds and will retain the balance in full settlement of our fees and expenses."

McAdam endorsed the check and thereafter received $2,000 of those funds and Dynes' law firm received $5,500.

McAdam thereafter sued Dynes in small claims court, alleging in substance that there was no written contract for attorney fees and that he believed Dynes was representing him on a contingency fee basis. McAdam further alleged that he was informed of the amount of Dynes' attorney fees after the case was settled and that although he agreed to the settlement with West River, he did not agree to the amount of the attorney fees. Dynes removed the case to county court and answered, alleging that McAdam was informed of all the conditions surrounding the case and the settlement thereof and agreed to the division of monies when the case was settled.

Dynes moved for summary judgment and submitted an affidavit stating that "McAdam promptly endorsed all checks and signed all releases requested, thereby completing and settling our contractual arrangement." McAdam resisted the summary judgment motion and submitted an affidavit stating:

"That Affiant had had Mr. Dynes represent him on a case, prior to the instant action, in a Workmen's Compensation Claim and that Mr. Dynes received his attorney's fees from the Workmen's Compensation Bureau;

"In the instant case, being a labor dispute under the Federal law, Mr. Dynes told Affiant, and as established in the pleadings, that Mr. Dynes was to get his fees from the defendant pursuant to the Federal law;

\* \* \* \* \* \*

"That Mr. Dynes, supposedly fully aware of the circumstances of the case, and the law governing the recovery thereon, entered into negotiations for the settlement of the case with the defendant management company;

"That Affiant agreed to the Fifteen Thousand Eight Hundred Dollar ($15,800.00) settlement, as between the then parties, but never agreed to any settlement in the way of attorney's fees with the defendant herein;

\* \* \* \* \* \*

"That at no time during the continuance of the case where Affiant was represented by the defendant herein, did Affiant have any understanding that he would be charged any sort of an hourly fee nor even a contingent fee because of defendant's statements and allegations in the Complaint that his fee would be recoverable under the Federal law from the defendants in that case; and, it was only because of Affiant's financial condition, after the case was settled for the Fifteen Thousand Eight Hundred Dollars ($15,800.00) did he accept the payments made to him by the defendant herein, but not with any understanding that that was the only money that he had coming to him from the settlement; and, at no time did Affiant understand nor even envision that he would receive only Four Thousand Dollars ($4,000.00) net, from the Fifteen Thousand Eight Hundred Dollar ($15,800.00) settlement."

The county court granted Dynes' motion for summary judgment, concluding:

"The parties made a division of the settlement recovery when it became known what that recovery would be. When the fees were divided between the parties, the contract was fully performed and completed. This Court is not willing to come a year after the fact and undo the completed contract.

\* \* \* \* \* \*

"The Defendant's Motion for Summary Judgment is hereby granted upon the grounds that the contract between the parties was fully executed and performed, and that there are no genuine issues of material fact."

Summary judgment is proper only if, after viewing the evidence in the light most favorable to the party against whom it is sought, there are no genuine issues of material fact and the party seeking it is entitled to judgment as a matter of law. *E.g.*, *Larson v. Baer*, 418 N.W.2d 282 (N.D. 1988).

■ Where an agreement is oral rather than written and must be proved by the testimony of the parties, summary judgment is inappropriate to resolve disputed issues of material fact as to the terms of the contract. *Security State Bank v. Schultz*, 350 N.W.2d 40 (N.D.1984). Prior to the establishment of an attorney-client relationship, the essentials of an express fee contract for legal services are the same as any other contract of employment, and the parties may deal with each other at arm's length. 7 Am.Jur.2d, *Attorneys at Law*, §§ 247, 248 (1980). However, because of the confidential nature of the attorney-client relationship, compensation agreements made during the existence of that relationship are closely scrutinized and construed most strongly against the attorney. *Tidball v. Hetrick*, 363 N.W.2d 414 (S.D.1985); 7 Am.Jur.2d, *Attorneys at Law*, § 249 (1980).

■ In this case there is a genuine issue of material fact about whether Dynes and McAdam entered into an oral fee agreement when the attorney-client relationship between them was established and, if so, what the terms of that oral agreement were. Any fee agreement made during the existence of the attorney-client relationship must be construed most strongly against the attorney, who has the burden of showing the fairness of the agreement. We believe that material factual issues exist about the terms and fairness of any such agreement. Because any fee agreement made during the existence of an attorney-client relationship must be construed against the attorney, we do not believe that McAdam is precluded from contesting any fee agreement because he accepted $4,000 of the settlement from Dynes. *See Mercy Hospital, Inc. v. Johnson*, 390 So.2d 103 (Fla.Ct.App.1980).

The summary judgment is reversed and the case is remanded to county court for further proceedings consistent with this opinion.

GIERKE, LEVINE and MESCHKE, JJ., VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of VANDE WALLE, J., disqualified.