In the Matter of the ESTATE of Hattie STARCHER, also known as Hattie M. Starcher, Deceased.

Robert B. BAIRD, Petitioner and Appellant,

v.

William A. ANUNDSON, Judy Heinze, Bonnie Heglie, and Michael C. Parke, Trust Officer for American State Bank,

Dickinson, ND, Personal Representative of the Estate of Hattie Starcher, Respondents and Appellees.

Civ. No. 890088.

Supreme Court of North Dakota.

Oct. 24, 1989.

Chapman & Chapman, Bismarck, for petitioner and appellant; argued by Daniel J. Chapman.

William Heth Law Firm, Dickinson, for respondent and appellee Michael C. Parke; argued by William G. Heth.

Eugene F. Buresh, of Freed, Dynes, Reichert & Buresh, P.C., Dickinson, for respondents and appellees William A. Anundson, Judy Heinze and Bonnie Heglie. No appearance.

LEVINE, Justice.

Robert Baird appeals from a county court order denying his claim against Hattie Starcher's estate. We reverse and remand for proceedings consistent with this opinion.

Baird's claim is for legal fees and costs that he allegedly incurred in the contest of a will of Hattie's brother, Emil Ridl. After Emil died on August 6, 1986, two wills were submitted for probate in his estate. The first will, dated June 8, 1984, named Baird as the personal representative and Hattie as the principal beneficiary of Emil's estate. The second will, dated August 1, 1986, named Emil's nephew, Kenneth Ridl, as personal representative and disinherited Hattie. A jury found that the second will was valid, and it was admitted to probate.

According to Baird, Hattie had orally agreed to pay him attorney fees of $80 per hour plus costs to contest Emil's second will. Baird claimed that he had incurred a total of $20,506.44 in attorney fees and costs in the will contest. Pursuant to Section 30.1–18–20, N.D.C.C. (Uniform Probate Code § 3–720],[1] Baird petitioned the county court in Emil's estate for an order requiring Emil's estate to pay the $20,506.44. In his petition, Baird claimed that he had advanced costs and rendered legal services in

---

1. Section 30.1–18–20, N.D.C.C. [U.P.C. § 3–720], provides:

    "*30.1–18–20. (3–720). Expenses in estate litigation.*—If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred."

that amount on behalf of himself as the named personal representative in the first will and on behalf of Hattie Starcher, Rose Privratsky, Theresa Doris M. Rodis, Judy Heinze, William A. Anundson, and Bonnie F. Heglie as the named devisees in the first will. The county court determined that the will contest by Baird was in good faith and ordered Emil's estate to pay him $4,000.

When Hattie died on June 29, 1988, Baird submitted a claim against her estate for the difference between the total amount of attorney fees and costs incurred in the will contest ($20,506.44) and the amount paid from Emil's estate ($4,000). The county court concluded that the unappealed decision awarding Baird $4,000 from Emil's estate was res judicata and that Baird was not entitled to the balance of $16,506.44. Baird has appealed.

Initially, we note that, in this unsupervised administration, there are two other unresolved claims of other creditors pending against Hattie's' estate. The record does not include a certification under Rule 54(b), N.D.R.Civ.P. Because there is no Rule 54(b) certification and there remain unresolved claims in this unsupervised administration, we must consider *sua sponte* whether this appeal is properly before us. *E.g., Harmon Motors v. First Nat'l Bank & Trust Co.*, 436 N.W.2d 240 (N.D.1989).

█ Rule 54(b) is applicable to probate proceedings. *Matter of Estate of Stuckle*, 427 N.W.2d 96 (N.D.1988); *Matter of Estate of Sorensen*, 406 N.W.2d 365 (N.D. 1987); *Matter of Estate of Erickson*, 368 N.W.2d 525 (N.D.1985); *First Trust Co. of North Dakota v. Conway*, 345 N.W.2d 838 (N.D.1984); *see* Sections 30.1–02–06.1, N.D.

C.C. [U.P.C. § 1–308] and 30.1–02–04, N.D. C.C. [U.P.C. § 1–304]. However, we have not fully delineated the relationship of Rule 54(b) to unsupervised probate administration. *See Matter of Estate of Stuckle, supra* (Meschke, J., concurring). Our analysis of the relationship of Rule 54(b) to unsupervised probate administration requires a brief description of the distinction between supervised and unsupervised administration.

"Supervised administration is a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the court which extends until entry of an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding." Section 30.1–16–01, N.D.C.C. [U.P.C. § 3–501]. In contrast to the single-proceeding-supervised administration, in an unsupervised administration, "each proceeding before the court is independent of any other proceeding involving the same estate," although "petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be finally granted without delay." Section 30.1–12–07, N.D. C.C. [U.P.C. § 3–107].[2] Finality in an unsupervised administration requires a concluding order on each petition [*Matter of Estate of Stuckle, supra*, (Meschke, J., concurring)], whereas finality in a supervised administration generally requires "an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding." Section 30.1–16–01, N.D.C.C. [U.P.C. § 3–501].[3]

**2.** Section 30.1–12–07, N.D.C.C. [U.P.C. 3–107], provides:

> "30.1–12–07 (3–107). *Scope of proceedings—Proceedings independent—Exception.—* Unless supervised administration as described in chapter 30.1–16 is involved, each proceeding before the court is independent of any other proceeding involving the same estate; petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be finally granted without delay. Except as required for proceedings which are particularly described by other sections of chapters 30.1–12

through 30.1–23, no petition is defective because it fails to embrace all matters which might then be the subject of a final order; proceedings for probate of wills or adjudications of no will may be combined with proceedings for appointment of personal representatives; and a proceeding for appointment of personal representative is concluded by an order making or declining the appointment."

**3.** The distinction between a supervised and an unsupervised administration is further explained in the Editorial Board Comment to Section 30.1–12–07, N.D.C.C. [U.P.C. § 3–107]:

■ In a supervised administration, an order entered before approval of distribution of the estate and discharge of the personal representative is not final and cannot be appealed without a Rule 54(b) certification. *Matter of Estate of Sorensen, supra; First Trust Co. of North Dakota v. Conway, supra.* In an unsupervised administration, an order determining some, but not all, of one creditor's claims against an estate is not appealable without a Rule 54(b) certification. *Matter of Estate of Stuckle, supra.*

■ The record does not establish that, in this unsupervised administration, Baird has any remaining claims against Hattie's estate. *Compare Stuckle, supra.* We believe that a workable reconciliation of Rule 54(b) and the "separate proceeding" provisions of an unsupervised administration is to treat a determination of *all* of one creditor's claims against an estate as a separate proceeding which does not need a Rule 54(b) certification. *See Stuckle, supra* (Meschke, J., concurring). If one creditor has more than one claim, an appeal from an order resolving some, but not all, of that creditor's claims is premature without a Rule 54(b) certification.[4] *Matter of Estate of Stuckle, supra.* Because this is Baird's only claim against Hattie's estate, we conclude that it is a final determination of that claim and is properly before us without a Rule 54(b) certification. We thus turn to the merits of Baird's appeal.

The dispositive issue is whether the county court erred in determining that Baird's claim against Hattie's estate was barred by the doctrine of res judicata.

■ "Res judicata means that a valid, existing final judgment from a court of competent jurisdiction is conclusive, with regard to the issues raised, or those that could have been raised, and determined therein, as to the parties and their privies in all other actions." *Matter of Estate of Hoffas,* 422 N.W.2d 391, 395 (N.D.1988).

■ In this case, we do not believe the issue of whether Hattie independently retained Baird to contest Emil's second will was raised or considered in Baird's prior claim against Emil's estate. Nor does it appear that that issue was relevant to the will contest. Relying on Section 30.1–18–20, N.D.C.C. [U.P.C. § 3–720], which authorizes reasonable attorney fees for services rendered on behalf of an estate [*see Matter of Estate of Vertin,* 381 N.W.2d 199 (N.D. 1986)], Baird sought attorney fees from Emil's estate for work as personal representative and for representing certain devisees under the first will. The court awarded $4,000 on Baird's claim against Emil's estate. We can only conclude that the trial court followed the law and awarded the $4,000 for Baird's work on behalf of Emil's estate, as authorized by Section 30.1–18–20, N.D.C.C. [U.P.C. § 3–720], and did not order payment for Baird's efforts on behalf of Hattie. We conclude that the $4,000 award from Emil's estate is not res judicata as to Baird's claim against Hattie's estate for Baird's alleged independent representation of Hattie in the will contest.

Because the county court erroneously relied on res judicata, it did not decide whether there was an oral agreement between Baird and Hattie. We therefore reverse and remand to the county court for consid-

"Sections 30.1–16–01 through 30.1–16–05 describe supervised administration, a judicial proceeding which is continuous throughout administration. It corresponds with the theory of administration of decedents' estates which prevails in many states.... If supervised administration is not requested, persons interested in an estate may use combinations of the formal proceedings (order by judge after notice to persons concerned with the relief sought), informal proceedings (request for the limited response that nonjudicial personnel of the probate court are authorized to make in response to verified application), and filings provided in the remaining Parts of

Article III to secure authority and protection needed to administer the estate. Nothing except self-interest will compel resort to the judge. When resort to the judge is necessary or desirable to resolve a dispute or to gain protection, the scope of the proceeding if not otherwise prescribed by the Code is framed by the petition."

4. As to the propriety of Rule 54(b) certification, *see Club Broadway, Inc. v. Broadway Park,* 443 N.W.2d 919 (N.D.1989), and *Peterson v. Zerr,* 443 N.W.2d 293 (N.D.1989).

eration of that issue, and if a contract is determined to exist, for determination of the time of contracting in light of *McAdam, v. Dynes,* 442 N.W.2d 914 (N.D.1989). In *McAdam,* we held that a compensation agreement made during the existence of an attorney-client relationship should be closely scrutinized and construed most strongly against the attorney. Upon remand, the county court is free to hold an additional hearing with further testimony as it deems appropriate.

Because of our resolution of this case, we will briefly discuss two remaining issues which may arise on remand.

Hattie's estate argues that under Section 9–06–04(1) and (2), N.D.C.C.,[5] the alleged oral agreement between Baird and Hattie was barred by the statute of frauds because it was not in writing.

An oral contract is not within the statute of frauds if there is any possibility that it may be performed within one year. *Bergquist–Walker Real Estate, Inc. v. William Clairmont, Inc.,* 333 N.W.2d 414 (N.D.1983). The alleged oral agreement between Baird and Hattie was capable of performance within one year, and therefore, if such an agreement existed, it was not within the statute of frauds. Moreover, if there was an oral agreement between Baird and Hattie, there was no evidence that Hattie was answering for the debt of another. Instead, Hattie allegedly independently retained Baird to contest Emil's second will under which she was the principal beneficiary. The evidence does not establish that any promise by Hattie to pay for Baird's representation was a promise to answer for the debt of another under Section 9–06–04(2), N.D.C.C.

Baird also argues that Hattie's declarations about the existence of the alleged contract were not hearsay.

Rule 801(c), N.D.R.Ev., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In *Matter of Estate of Raketti,* 340 N.W.2d 894 (N.D.1983), we said that statements offered to prove that a contract existed were not hearsay because they were offered to prove that an agreement existed and were not offered to prove the truth of the matter asserted. In this case, the alleged statements by Hattie about whether an agreement existed between Baird and her were offered to prove the existence of an agreement and were admissible under the rationale of *Raketti.*

The county court order is reversed and the case is remanded for proceedings consistent with this opinion.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, J., concurs in the result.

---

5. Section 9–06–04(1) and (2), N.D.C.C., provides:
    "*9–06–04. Contracts invalid unless in writing—Statute of frauds.* The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof.
"2. A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section 22–01–05."