In the Matter of the ESTATE OF Arnold L. KETTERLING, Deceased.

Lloyd KETTERLING, Petitioner
and Appellant,

v.

Sandy GONZALES, Respondent
and Appellee.

Civ. No. 930208.

Supreme Court of North Dakota.

April 20, 1994.

Daniel J. Chapman (argued) of Chapman & Chapman, Bismarck, for petitioner and appellant.

Gregory C. Larson (argued) of Wheeler Wolf, Bismarck, for respondent and appellee.

MESCHKE, Justice.

Lloyd Ketterling appealed from an order denying reconsideration of an order dismissing his petition to set aside the informal probate of a will, to establish intestacy, and to appoint a new personal representative. Lloyd also appealed from the original order dismissing his petition and from an order denying his demand for a change of judge. We affirm.

Arnold L. Ketterling died May 6, 1991. He was single, and his surviving relatives were his mother, three brothers, including Lloyd, and two sisters. On May 9, 1991, one brother, Lawrence, was appointed special administrator of the estate to determine, among other things, whether Arnold left a will. Lawrence found no will, and his appointment was revoked. On June 17, 1991, William Chausee, the public administrator for Burleigh County, was appointed personal representative.

A few hours after Chausee was appointed, a will was found nominating Sandy Gonzales, who had lived with Arnold before his death, as the personal representative of the estate. In the will, dated December 23, 1989, Arnold gave the bulk of his estate to Gonzales. Gonzales applied for appointment as personal representative and for informal probate of the will. The trial court rescheduled the hearing on Gonzales's application for July 17, 1991, and ordered 14 days notice of the hearing given to interested persons.

On July 8, the attorney for the Ketterling family opposed Gonzales's application, alleging that the will "appeared under mysterious circumstances" and that the family was seeking to determine whether Arnold's signature on the will was genuine. The family's attorney asked to delay the July 17 hearing because of a conflict in his schedule. The trial court refused further delay.

Before the hearing, Gonzales filed affidavits of the attesting witnesses to the will, Dean Clairmont and Kenneth Hartlieb. Each swore he had been at Arnold's house on December 23, 1989, had witnessed Arnold sign the will, and then had signed as a witness. At the hearing, Hartlieb testified that he witnessed Arnold's signature on the will and gave details of his friendship with Arnold and the signing of the will. Gonzales testified about her relationship with Arnold. The Ketterling family and their attorney did not attend the hearing.

The trial court concluded that Gonzales had priority to act as personal representative and issued letters of administration to her. The court also ordered Gonzales to give known samples of Arnold's handwriting to the Ketterling family for use in expert analysis of the signature on the will.

Ten months later, the trial court approved substitution of a different attorney to represent Lloyd Ketterling. On September 28, 1992, Lloyd filed a "Petition to Set Aside Informal Probate of Will, for Formal Establishment of Intestacy, for Appointment of Personal Representative and Request for Jury Trial." Lloyd objected to probate of the will because he "verily believes that the purported Will is not the Last Will and Tes-

tament of the decedent." Lloyd sought appointment as personal representative of the estate.

Lloyd's petition was not served on Gonzales or other interested persons. On December 8, 1992, the trial court asked the clerk to call Lloyd's attorney to suggest that he serve the petition on interested persons. Lloyd's attorney served Gonzales with notice of filing the petition on January 14, 1993. Gonzales served and filed a resistance to Lloyd's petition on February 4, 1993.

On February 25, 1993, the trial court, on its own initiative, dismissed Lloyd's petition. The court reasoned:

> In this case, the petitioner merely states he "verily believes that the purported Will is not the Last Will and Testament of the decedent." The statement is conclusory and no basis for the petitioner's contention that the will is not the last will of the decedent is provided.
>
> Section 30.1–15–03 provides for notice requirements when a formal testacy proceeding is commenced. The petitioner has not complied with those requirements.
>
> Because the petitioner has not complied with statutory requirements in this case, the petition is DISMISSED.

Lloyd later filed a demand for change of judge with the presiding judge of the judicial district. The presiding judge denied the demand for change of judge, reasoning that the judge had "acted in all matters throughout these proceedings." Lloyd also asked the trial court to reconsider its order. Lloyd argued that the trial court erred because no notice of filing the petition was required by statute and no one moved for dismissal. Following a hearing, the trial court denied reconsideration and affirmed its dismissal of Lloyd's petition.

Lloyd appealed from the order dismissing his petition, the order denying reconsideration of that order, and the order denying his demand for change of judge.

## I

■ Although neither party questioned appealability, we review appealability on our own initiative. *City of Fargo v. Casper*, 512 N.W.2d 668, 669 (N.D.1994). This is an unsupervised administration of an estate. The orders dismissed all of Lloyd's claims, and therefore no NDRCivP 54(b) certification was required. *See Matter of Estate of Burshiem*, 483 N.W.2d 175, 178 n. 4 (N.D. 1992); *Jarmin v. Shriners Hospitals*, 450 N.W.2d 750, 751 n. 3 (N.D.1990); *Matter of Estate of Starcher*, 447 N.W.2d 293, 296 (N.D.1989). Because this record does not show that Lloyd was served with notice of entry of any of the orders, his appeals are timely under NDRAppP 4(a). *Matter of Estate of Erickson*, 368 N.W.2d 525, 528 (N.D. 1985); *Matter of Bo*, 365 N.W.2d 847, 850 (N.D.1985). Even if Lloyd had actual knowledge of entry of the original order dismissing his petition, *see Lang v. Bank of North Dakota*, 377 N.W.2d 575, 577–578 (N.D.1985), we believe he can obtain review through his timely appeal from the order denying reconsideration of the original dismissal without a hearing.

■ Under NDCC 28–27–02(7), an appeal of an order made without notice or hearing is precluded until the judge has a chance to reconsider that decision in an adversary proceeding. *Matter of Estate of Kjorvestad*, 395 N.W.2d 162, 163 (N.D.1986); *Beck v. Smith*, 296 N.W.2d 886, 888 (N.D.1980). Here, although the trial court dismissed the petition without notice or hearing, Lloyd moved for reconsideration, and an adversary proceeding was held. Under NDCC 28–27–02(7), the trial court's order denying Lloyd's motion to reconsider the original order is therefore appealable.

■ Finally, while an order denying a demand for change of judge is interlocutory and not appealable in itself, we will review an intermediate order on appeal from a final judgment. NDRAppP 35(a); *Adolph Rub Trust v. Rub*, 473 N.W.2d 442, 444 (N.D. 1991). We conclude that we have jurisdiction of Lloyd's appeal.

## II

Whether Lloyd's challenge to Arnold's will is procedurally viable depends to some extent on whether the July 17, 1991 proceeding was a formal or an informal testacy proceeding.

In general, the Uniform Probate Code, NDCC Title 30.1, authorizes both formal and informal proceedings. The effect of an order in a formal proceeding differs significantly from an order in an informal proceeding.

 "Informal proceedings" are "those conducted by the court for probate of a will or appointment of a personal representative without notice to interested persons." NDCC 30.1–01–06(20) [UPC 1–201]. Informal proceedings are thus limited to two kinds: admission of wills to probate and appointment of personal representatives. *Matter of Estate of Hoffas,* 422 N.W.2d 391, 395 n. 4 (N.D.1988). These informal acts do not involve adjudication. I Uniform Probate Code Practice Manual, at p. 21 (2d ed. 1977). The effect of an informal probate is that it "is conclusive as to all persons until superseded by an order in a formal testacy proceeding." NDCC 30.1–14–02 [UPC 3–302]. Thus, informal proceedings for determining testacy and appointing personal representatives generally do not have notice requirements, are basically ex parte in nature, and are handled administratively, not adversarially. "Upon settlement and distribution of the estate under this type of proceeding, the determinations made have no res judicata effect but rather are protected by various statutes of limitation." *Matter of Estates of Cahoon,* 102 Idaho 542, 546, 633 P.2d 607, 611 (1981). *See,* for example, NDCC 30.1–12–08(3) [UPC 3–108]: "A proceeding to contest an informally probated will and to secure appointment of the person with legal priority for appointment in the event the contest is successful, may be commenced within the later of twelve months from the informal probate or three years from the decedent's death."

On the other hand, "[f]ormal proceedings" are "those conducted before a judge with notice to interested persons." NDCC 30.1–01–06(16) [UPC 1–201]. "A formal testacy proceeding is litigation to determine whether a decedent left a valid will." NDCC 30.1–15– 01(1) [UPC 3–401] (part). *See also Matter of Estate of Polda,* 349 N.W.2d 11, 16 (N.D. 1984). Litigation to determine whether a decedent left a valid will can encompass determinations "that the decedent left a will, that he left no will, that he left several instruments, any one or more of which might constitute a valid will, or that he died testate as to a portion of his estate and intestate as to the balance." I Uniform Probate Code Practice Manual, at p. 242. A contested hearing on whether the decedent left a valid will, after notice and before a judge, is ordinarily a formal testacy proceeding.

 A formal testacy proceeding is begun by a petition that conforms to the directives of NDCC 30.1–15–02 [UPC 3–402]. The petition must be directed to the court, request a judicial order after notice and hearing about a particular instrument, and supply the information mandated by NDCC 30.1–14–01 [UPC 3–301] for an informal probate. *Id. See also* I Uniform Probate Code Practice Manual, at pp. 246–248. If any interested parties object to probate of a will, they must state the objections in their pleadings and file them with the court. NDCC 30.1–15–04 [UPC 3–404]. The court sets a hearing date on the petition, and notice of the hearing must be given to all interested persons.[1] NDCC 30.1–15–03(1) [UPC 3– 403]. *See generally* E. Ross & T. Reed, *Will Contests* § 4.8 (1992). Thus, any will contest generally becomes a formal proceeding.

In all formal estate proceedings, NDCC 30.1–03–01 [UPC 1–401] prescribes that notice be given to every interested person, or to one who can bind an interested person. *See also* NDCC 30.1–03–03 [UPC 1–403]; *Matter of Estate of Hoffas,* 422 N.W.2d at 395; I Uniform Probate Code Practice Manual, at pp. 248–250. When notice is required, those notified under NDCC 30.1–03–01 [UPC 1– 401] are bound by orders of the court even though fewer than all interested persons are

---

1. Under NDCC 30.1–01–06(21) [UPC 1–201], the term "[i]nterested person" includes

heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may be affected by the proceeding. It

also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

notified. NDCC 30.1–12–06 [UPC 3–106]; *Matter of Estate of Hoffas.*

A formal proceeding which is to be effective on all interested persons must follow reasonable notice to such persons. It seems desirable to force the proceedings through a formal determination of heirship because the finding will bolster the order, as well as preclude later questions that might arise at the time of distribution. Editorial Board Comment to NDCC 30.1–15–02 [UPC 3–402]. *See also* NDCC 30.1–21–01(1) [UPC 3–1001] (After notice to all interested persons and hearing to settle an estate, the court may determine the persons entitled to distribution of the estate and order distribution). With notice, a will contest is ordinarily a formal testacy proceeding.

■ A formal testacy order supersedes any prior order admitting a will to probate through informal testacy proceedings, so far as the formal testacy order conflicts with it. *See* E. Ross & T. Reed, *Will Contests* § 4.8 at p. 16; *Matter of Estate of Torstenson,* 125 Ariz. 373, 375, 609 P.2d 1073, 1075 (Ct.App.1980). The effect of the formal order is spelled out in NDCC 30.1–15–12 [UPC 3–412]:

Subject to appeal and subject to vacation as provided herein and in section 30.1–15–13, a formal testacy order under sections 30.1–15–09 through 30.1–15–11, including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs, except that:

1. The court shall entertain a petition for modification or vacation of its order and probate of another will of the decedent if it is shown that the proponents of the later-offered will were unaware of its existence at the time of the earlier proceeding or were unaware of the earlier proceeding and were given no notice thereof, except by publication.

2. If intestacy of all or part of the estate has been ordered, the determination of heirs of the decedent may be reconsidered if it is shown that one or more persons were omitted from the determination and it is also shown that the persons were unaware of their relationship to the decedent, were unaware of his death, or were given no notice of any proceeding concerning his estate, except by publication.

3. A petition for vacation under either subsection 1 or 2 must be filed prior to the earlier of the following time limits:

 a. If a personal representative has been appointed for the estate, the time of entry of any order approving final distribution of the estate, or, if the estate is closed by statement, six months after the filing of the closing statement.

 b. Whether or not a personal representative has been appointed for the estate of the decedent, the time prescribed by section 30.1–12–08 when it is no longer possible to initiate an original proceeding to probate a will of the decedent.

 c. Twelve months after the entry of the order sought to be vacated.

When the formal processes of admitting a will to probate, appointing a personal representative, or settling an estate are preceded by notice to all interested persons and a full adversarial hearing, the adjudication generally binds notified persons.

There is an exception. NDCC 30.1–01–03 [UPC 1–106] authorizes an independent action for relief from fraud:

Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this title, or if fraud is used to avoid or circumvent the provisions or purposes of this title, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of

the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate.

The Editorial Board Comment to this statute explains:

This is an overriding provision that provides an exception to the procedures and limitations provided in the Code. The remedy of a party wronged by fraud is intended to be supplementary to other protections provided in the Code and can be maintained outside the process of settlement of the estate. Thus, if a will which is known to be forgery is probated informally, and the forgery is not discovered until after the period for contest has run, the defrauded heirs still could bring a fraud action under this section....

Any action under this section is subject to usual rules of res judicata; thus, if a forged will has been informally probated, an heir discovers the forgery, and then there is a formal proceeding under section 30.1–21–01 of which the heir is given notice, followed by an order of complete settlement of the estate, the heir could not bring a subsequent action under section 30.1–01–03 but would be bound by the litigation in which the issue could have been raised. The usual rules for securing relief for fraud on a court would govern, however.

Thus, if it has not already been litigated in a formal testacy proceeding, a party wronged by fraud may bring a timely action outside of the usual procedures and limitations.

▪ In this case, on June 17, 1991, Gonzales filed an "Application for Informal Probate of Will and Appointment of a Personal Representative." It contained the statements required for informal probate. On June 21, 1991, the trial court required "14-day notice of any hearing scheduled in this matter." Under NDCC 30.1–15–03(1) [UPC 3–403], upon commencement of a formal testacy proceeding, notice of the time and place of hearing must be given at least 14 days before the time set for the hearing. *See* NDCC 30.1–03–01(1) [UPC 1–401]. The record contains an affidavit of service of mail dated June 28, 1991, showing that Gonzales's documents and notice of hearing were mailed to Chausee, the public administrator, and to the Ketterling family's attorney of record. The attorney, responding on behalf of the Ketterling family, including "Lloyd," resisted the application and asked that the July 17, 1991 hearing be rescheduled because he would be out of town. On July 15, 1991, the court refused to reschedule the hearing. The hearing was held with testimony and other evidence introduced. Lloyd, the other Ketterlings, and their attorney did not appear at the hearing. *Compare Matter of Estate of Polda*, 349 N.W.2d at 16 [petition for informal probate can be converted to formal probate by agreement of parties]; *Matter of Estate of Chasel*, 725 P.2d 1345, 1347–1348 (Utah 1986) [proceeding to approve compromise agreement resulting in final distribution order constituted formal testacy proceeding where statutory requirements were met]. Arguably, this July 17 hearing substantially fulfilled all elements of a formal testacy proceeding notwithstanding the Ketterling family's failure to appear.

Yet it is clear that neither the trial court nor Gonzales considered the July 17, 1991 hearing to be a formal testacy proceeding. Gonzales argued in her brief to the trial court in opposition to the Ketterlings' request to reschedule the hearing that these were "informal appointment proceedings" and that the will opponents could, in the future, "petition the Court under formal testacy proceedings to set aside the informal probate of the will." The "Statement of Informal Probate of Will and Appointment of Personal Representative" signed and filed by the trial court on July 23, 1991, notes the inapplicability of NDCC 30.1–14–04 [UPC 3–304] that instructs when informal probate applications should be declined. The trial court also ordered that known samples of Arnold's handwriting be made available to the Ketterlings for possible use in a future proceeding. We conclude that the July 17 hearing was not a formal testacy proceeding that would bar another formal proceeding on the validity of Arnold's will.

▪ Nevertheless, whether we treat Lloyd's present petition as requesting formal testacy proceedings under NDCC Ch. 30.1–

15 to supersede informal probate proceedings under NDCC Ch. 30.1–14, or as an independent proceeding under NDCC 30.1–01–03 [UPC 1–106] to invalidate a will probated in a formal testacy proceeding based on recent discovery of fraud, the result is the same.

Lloyd petitioned for formal establishment of intestacy based solely on an allegation that he "verily believes that the purported Will is not the Last Will and Testament of the decedent." No particular circumstances were alleged. During the July 17, 1991 hearing, Gonzales presented affidavits of both attesting witnesses saying they had witnessed Arnold sign the will. One of those witnesses also testified at the hearing. In this setting, Lloyd's frugal allegation necessarily implies that someone has committed a fraud.

■■■ The rules of civil procedure apply to "formal proceedings" unless the UPC specifically provides to the contrary or unless the rules are inconsistent with UPC provisions. NDCC 30.1–02–04 [UPC 1–304]. *See also Matter of Estate of Bieber*, 256 N.W.2d 879, 881 (N.D.1977). Under NDRCivP 9(b), the circumstances constituting fraud must be plead "with particularity." Although no particular form or language is required when a claimant alleges fraud, the claimant must fairly apprise the other party of the factual basis for the claim, and the other party must receive enough information to prepare a response and defense. *Miller Enterprises v. Dog N' Cat Pet Centers*, 447 N.W.2d 639, 643 (N.D.1989). We see no inconsistency in applying this rule of civil procedure to either a formal testacy proceeding, or to an independent action for relief from fraud.

A trial court may, on its own initiative and in the exercise of its cautious discretion, dismiss a complaint for failure to state a valid claim. *Patten v. Green*, 397 N.W.2d 458, 459

(N.D.1986). We believe the trial court properly did so in this case. Construed in the light most favorable to Lloyd, *see Ennis v. Dasovick*, 506 N.W.2d 386, 389 (N.D.1993), his petition's conclusory allegation does not state the circumstances of the alleged fraud with particularity. *See In Re Marler's Estate*, 148 Cal.App.2d 30, 306 P.2d 105, 110 (1957) [sole allegation that "the purported will is not genuine" insufficient without further "particulars in which it is not genuine...."]. The trial court did not order that Lloyd's petition be dismissed with prejudice. If Lloyd can allege fraud with particularity, he may still be entitled to seek appropriate relief, if he does so timely.

We conclude that the trial court did not err in dismissing Lloyd's petition.[2]

### III

■■■ Lloyd argues that the presiding judge erred in refusing to grant his demand for change of judge under NDCC 29–15–21. We disagree.

Lawrence Ketterling filed the first application for informal probate of Arnold's estate on May 9, 1991. The trial judge signed the first of many orders in the probate of Arnold's estate on the same date. The trial court's original order dismissing Lloyd's petition was filed on February 25, 1993. An affidavit of service by mail shows that the order was mailed to Lloyd, his attorney and others on the same date. Lloyd's demand for change of judge is dated March 18, and was filed with the court on March 22, 1993. The presiding judge denied the demand for change of judge, reasoning that the trial judge "has acted in all matters throughout these proceedings."

Lloyd argues that the presiding judge erred in determining that a person who files

---

2. Lloyd also asserts that the trial court erred in determining that notice of the filing of the petition for formal testacy proceedings, as opposed to notice of the formal hearing itself, was also required. *See* NDRCivP 5(a) ("... every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, ... every written motion other than one which may be heard ex parte, ... and similar paper shall be served upon each of the parties.").

We need not decide this question because we affirm on a different basis, and because the trial court, in any event, directed Lloyd's counsel to give notice of filing. We note, however, that the Montana Supreme Court has construed the pertinent UPC sections as requiring that all interested persons be given notice of the filing of a formal will contest. *See Matter of Estate of Holmes*, 183 Mont. 290, 599 P.2d 344, 346 (1979).

for formal testacy proceedings cannot demand a change of judge if that judge has been involved in prior informal proceedings regarding the estate. Lloyd stresses that, because each proceeding before the court in an unsupervised administration is independent of any other proceeding involving the same estate, *see Matter of Estate of Starcher*, 447 N.W.2d at 295, and NDCC 30.1–12–07 [UPC 3–107], the judge in the informal proceedings has not, in effect, already participated in the case.

Informal probate proceedings may be combined with formal probate proceedings during the unsupervised administration of an estate. "If supervised administration is not requested, persons interested in an estate may use combinations of the formal proceedings (order by judge after notice to persons concerned with the relief sought), informal proceedings (request for the limited response that nonjudicial personnel of the probate court are authorized to make in response to verified application), and filings provided in [NDCC Ch. 30.1–12 through 30.1–23] to secure authority and protection needed to administer the estate." Editorial Board Comment to NDCC 30.1–12–07 [UPC 3–107]. A trial judge is assigned to preside over estate proceedings whether they are formal or informal in nature. Although portions may be separate and independent for some purposes, they relate to the same estate. It is the estate, rather than the nature of the proceedings involved, that we believe should govern application of NDCC 29–15–21. Adopting Lloyd's argument would jeopardize the express objectives of speed and efficiency in the handling of estates sought to be attained by the Uniform Probate Code. *See* Robert L. Stroup II, *Probate Practice Under the Uniform Probate Code*, 46 N.D.L.Rev. 289 (1970). Therefore, we decline to adopt Lloyd's argument that a person is entitled to peremptorily disqualify an assigned judge every time a formal proceeding is commenced during the probate of an estate.

The legislature has allowed peremptory disqualification of a judge in proceedings to modify an order for alimony, property division, or child support by expressly stating that modification proceedings "must be con-

sidered a proceeding separate from the original action and the fact that the judge sought to be disqualified made any ruling in the original action does not bar a demand for a change of judge." NDCC 29–15–21(3). *See also Stroschein v. Stroschein*, 390 N.W.2d 547, 549 (N.D.1986). The legislature has not distinguished between proceedings in probate administration for disqualification of a judge, and we decline Lloyd's invitation to do so.

But even if we agreed with Lloyd's argument, his demand for change of judge was nevertheless invalid. Under the law, a party seeking to peremptorily disqualify a judge "must file a timely request before that judge has ruled upon any matter pertaining to the case." *State v. Zueger*, 459 N.W.2d 235, 236 (N.D.1990). *See also* NDCC 29–15–21(2) and (4). A "demand is invalid unless it is filed with the clerk of the court not later than ten days after the occurrence of the earliest of any one of the following events: ... The date of service of any ex parte order in the case signed by the judge against whom the demand is filed." NDCC 29–15–21(2)(c). We construe the trial court's February 25, 1993 dismissal of Lloyd's petition, without prior notice and opportunity for Lloyd to be heard, as an ex parte order within the meaning of the statute. Even if not an ex parte order, the February 25, 1993 dismissal certainly gave Lloyd "notice of assignment or reassignment of a judge for trial of the case" within the meaning of NDCC 29–15–21(2)(a) that also triggers the ten-day limit. *See* NDCC 1–01–22. Lloyd's demand for change of judge was not filed until almost one month after the date of service of the order; the demand is therefore untimely. Lloyd's demand was therefore invalid, and the presiding judge did not err in refusing to grant it.

It is unnecessary to address the other questions raised by the parties. Because neither Lloyd's pleadings nor this appeal is frivolous, we deny Gonzales's request for sanctions.

The orders are affirmed.

VANDE WALLE, C.J., LEVINE and NEUMANN, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.